### Case No. 7,152.

JACKSON INS. CO. v. STEWART.

[1 Hughes, 310;[1] 6 Am. Law Reg. (N. S.) 732.]

Circuit Court, D. Maryland. Nov., 1866.

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

George W. Brown and Arthur George Brown, for plaintiff.

Jarvis Spencer, for defendant.

GILES, District Judge. Unquestionably in this case lex foci prevails, and not lex loci contractus; hence the court will apply the law of Maryland, which requires suit to be brought within three years. 1 Code Md. art. 57, §§ 1, 2. In this law there are certain specified exceptions provided for, but it is a mistake to suppose that exceptions may not arise other than those mentioned in the statute. The law always supposes the existence of a party in being capable of suing; and if, when the cause of action occurs, there is no such party capable of suing, limitations do not begin to run until such a party comes into being. Hence, if war had existed at the time this cause of action accrued, limitations would not have begun to run against plaintiff's claim until the war ended. On the 7th of September, 1861, this court decided that the president of the United States had the right, by proclamation, to recognize the existence of a state of war, and that the war, from and after the date of such proclamation, existed between the states mentioned in the proclamation and the rest of the United States; also that the late war, when so declared and recognized by the president's proclamation, became a civil war, and imposed upon both belligerents all the rights and consequences of such a war. This was one of the earliest decisions in regard to our late civil war, and the principles there enunciated have since been fully confirmed by the supreme court in the Prize Cases, 2 Black [67 U. S.] 635. The justices of that court were unanimous as to all the consequences which resulted from a state of civil war, but the three dissenting judges were of the opinion that the war began only after the proclamation of the president of August 16th, 1861, passed in pursuance of power conferred upon him by the act of July 13th, 1861 [12 Stat. 255]. As regards the state of Tennessee, there can be no doubt that war existed in consequence of the proclamation of the president of August 16th, 1861, and not before, as that state was not included in the previous proclamations. It is a well-settled principle, that contracts made before war are only suspended by the war, whereas, contracts made during the war, are void. This principle is fully recognized by the supreme court in regard to our late civil war. In ancient times private property of alien enemies, and debts of every kind were confiscated to the state. Happily, all this has been changed in modern times; and now, while contracts made during war between alien enemies are absolutely void, being against public policy, private interests are protected, and bona fide contracts made before the breaking out of the war are suspended during its continuance, but revive at its termination. To the honor of the Unit-

ed States and Great Britain be it said, that these rights have always been respected by them.

It has been repeatedly decided by both state and federal courts, that where, by a legislative enactment, parties are prevented from prosecuting their claims, the interval during which such prevention lasts is not to be counted as part of the time allowed by the statute of limitations. Now, the power to make war and peace is by the constitution of the United States delegated exclusively to the federal government; and as during the war, the plaintiff, being a corporation of the state of Tennessee, had no right to bring suit against the defendant, who was a citizen of Maryland, the Maryland statute of limitations was suspended during such period. The general rule unquestionably is, that where the statute of limitations has once begun to run, no subsequent disability will arrest it. But we have already seen that a legislative enactment suspends the running of the statute, and the same result follows from the declaration of war by the supreme power of the land. For it is a well-recognized principle of the law of nations that the right of a creditor to sue for the recovery of his debt is not extinguished by the war. It is only suspended during the war, and revives in full force on the restoration of peace. A war, then, having certainly existed between Tennessee and the federal government, from the president's proclamation of August 16th, 1861, and which, although a civil war, yet, according to the decision of the supreme court in the Prize Cases, carried with it all the consequences and disabilities of a public war, one of which, as we have seen, was the suspension of the right to sue during the war; it follows, therefore, that the plaintiff in this case could have instituted no proceedings in this court until peace was proclaimed by the president's proclamation of June 13th, 1865. This suspension being by the exercise of the paramount authority of the government, cannot be held to work a forfeiture of the plaintiff's cause of action, but his right to sue, suspended by the war, revived when it ceased; and as it has not been three years from the maturity of the cause of action to the commencement of the war, and from the termination of the war to the commencement of this suit, this suit is not barred by limitation, and the demurrer is therefore overruled. The case being then, by agreement, submitted to the court, judgment was given for the full amount of the plaintiff's claim, together with interest from the 26th of April, 1861, to the 16th of August, 1861, and from the 13th of June, 1865, to date, no interest being allowed for the time during which the war lasted.